DUSTIN L. CLARK
Nevada Bar No. 10548
1127 East 230 North
Lindon, Utah 84042
Phone: (702) 540-9070
E-mail: dustin@clarklawcounsel.com

ZACHARY P. TAKOS
Nevada State Bar No. 11293
STEVEN R. HART
Nevada State Bar No. 15418
Takos Law Group, Ltd.
10785 West Twain Avenue, Suite 224
Las Vegas, Nevada 89135
Phone: (702) 658-1900
E-mail: zach@takoslaw.com
        steven@takoslaw.com

*Attorneys for Plaintiff Lindsey York*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LINDSEY YORK, an individual,<br><br>         Plaintiff,<br><br>     v.<br><br>VANTAGE DATA CENTERS MANAGEMENT COMPANY, LLC, a Delaware limited liability company,<br><br>         Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>JURY DEMAND |

Plaintiff Lindsey York hereby complains and alleges as follows against Defendant Vantage Data Centers Management Company, LLC:

**JURISDICTION & VENUE**

1. Pursuant to 28 U.S.C. § 1331 (federal question), this Court has original jurisdiction over this civil action because claims asserted herein arise under the laws of the United States,

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

specifically: the Pregnant Worker Fairness Act ("PWFA"), 42 U.S.C. §§ 2000gg – 2000gg-6; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17, as amended, including amendments through the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 – 219, as amended, including amendments through the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act"), 29 U.S.C. § 218d.

2. Additionally, as the above-captioned matter includes claims for relief brought under Subchapter VI of Chapter 21 of Title 42 of the U.S. Code, 42 U.S.C. §§ 2000e – 2000e-17, this Court has jurisdiction over this action, 42 U.S.C. § 2000e-5(f)(3).

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the pendent state-law claims pleaded herein because such claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a).

4. All or a substantial part of the events or omissions giving rise to the claims set forth herein occurred in County of Washoe, State of Nevada; therefore, pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and LR IA 1-6, venue properly lies in the United States District Court for the District of Nevada, unofficial Northern Division.

**PARTIES**

5. Plaintiff Lindsey York ("Plaintiff" or "York") is an individual who resides and, at all times relevant to this action, has resided in Reno, Washoe County, Nevada.

6. At all times relevant hereto, Defendant Vantage Data Centers Management Company, LLC ("Defendant," "Vantage," or "Company") has been a foreign limited liability company organized and existing under the laws of the State of Delaware, designated by the

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

Delaware Division of Corporations as file number 4806376 and registered and licensed to conduct business in the State of Nevada and identified by the Nevada Secretary of State as entity number E28710462023-3.

7. Defendant is and, at all times pertinent hereto, was an "employer" subject to the statutes and accompanying regulations that Plaintiff alleges Defendant violated, as averred and claimed below. *E.g.*, Civil Rights Act of 1964 § 701(b), 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees . . . ."); Pregnant Worker Fairness Act § 102, 42 U.S.C. § 2000gg(2)(B)(i) ("[T]he term 'covered entity' . . . includes an employer which means a person engaged in industry affecting commerce who has 15 or more employees . . . ."); Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) (prohibiting employers with fifteen or more employees from discriminating against an employee "on the basis of pregnancy, childbirth, or related medical conditions"); PUMP Act, 29 U.S.C. §§ 203(d), 218d (The term "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee.").

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. On November 24, 2025, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights Commission ("NERC") stating that Vantage unlawfully discriminated against her based on her pregnancy and sex, illegally denied her a reasonable accommodation related to her pregnancy, and unlawfully retaliated against her for engaging in protected activity, including reporting discriminatory treatment and requesting an accommodation related to her pregnancy.

9. Plaintiff's charge of discrimination was assigned EEOC No. 556-2026-00153. A true and correct copy of York's charge of discrimination is attached hereto as **EXHIBIT 1**.

3

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

10.     On December 16, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff, a true and correct copy of which is attached to this Complaint as **EXHIBIT 2**.

11.     The above-captioned action has been filed with the Court within ninety days of Plaintiff's receipt of the Notice of Right to Sue, and thus this action is timely filed pursuant to 42 U.S.C. § 2000e-5(f)(1).

12.     Plaintiff has exhausted administrative remedies for any claims set forth herein that may require such exhaustion.

### ALLEGATIONS COMMON TO THE CLAIMS FOR RELIEF

13.     Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

14.     In a letter dated January 11, 2024, the Company offered York the position of Director, Construction, NA, based in Reno, Nevada at an annualized salary of $210,000.

15.     Prior to joining Vantage, York had over twenty years of construction-management experience in complex, fast-paced construction and manufacturing sectors.  Prior to Vantage, York worked for Apple for two years, Southland Industries for approximately five years, and McKinstry Company for twelve years.

16.     On February 5, 2024, York commenced employment with Vantage.  As Director, Construction, NA, she managed the Company's Nevada construction projects, including supervising her team and maintaining working relationships with the General Contractor and subcontractors.

17.     When York first started with Vantage, she initially reported to Simon Casey, Vice President.

4

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

18.    In early-May 2024, York, who was pregnant and due to give birth the following month, started working remotely from Seattle in preparation for medical procedures related to her pregnancy. She gave birth on June 6, 2024, and her maternity leave commenced the same day.

19.    In July 2024, three individuals, hired for York's team, commenced employment and the Company broke ground on the Nevada construction project managed by York.

20.    Also in July 2024, York's supervisor, Simon Casey, was promoted from Vice President to Senior Vice President ("SVP"). York asked Casey if she could apply for the Vice President position left vacant by Casey's promotion to SVP, and although she was qualified for the position with twenty years of experience, Casey told her "no" without explanation.

21.    Without even allowing York to apply for Vice President position, Vantage hired Greg Winn to the position, and he became York's supervisor. Winn was an outside hire, referred by Vantage employee, Eric Wennstrom.

22.    In late-August 2024, Plaintiff's maternity leave ended five weeks earlier than planned, so she could return to work to manage her team on the Nevada construction project.

23.    Upon York's earlier-than-expected return to work from maternity leave in late-August 2024, she was met with skepticism and a lack of support. In York's first week back, Eric Wennstrom, who was a Director overseeing California construction jobs and helping out with Nevada projects, responded to York's question about general-contractor bidding practices by remarking on her early return and expressing surprise that she was resuming her duties. Also, Wennstrom questioned her approach to managing the project.

24.    In mid-September 2024, the jobsite was officially established, and York began working onsite. Due to a lack of accommodations for lactation, she was forced to bring her own trailer to use as a lactation space. At the time, York was the only woman employed as a manager

5

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

in the construction group and one of the only executive-level employees not provided with a dedicated office space, in contrast to her male peers nationally, including those in lower-ranking roles.

25.    Vantage's human resources department reacted to York's request for a lactation accommodation, stating that a lactation space was unnecessary because York had brought her own trailer despite York explaining that the general contractor would not allow the trailer to remain onsite long term.

26.    Meanwhile, Winn, the newly hired Vice President, proved incapable of performing the duties of a Vice President; instead, he operated at the Director level—effectively competing with York rather than providing the executive oversight and clear direction her position required. Winn told York's senior project manager, Michael Luby, that he considered himself the Director of Construction for Nevada and planned to take a more active role in managing York's site. Winn's only other direct reports, Eric Wennstrom in California and Rick Lindsay in Washington, both males with the same job position as York, were not subjected to the same level of mistrust, scrutiny, or exclusion.

27.    As the months progressed, Plaintiff faced escalating challenges, including: Vantage's failure to delineate and follow a leadership hierarchy and ensure a clear and smooth managerial transition from Casey to Winn; the Company's continued failure to provide lactation accommodations; and VP Winn's incompetence that rendered him unable to effectively assist York and her team members—all of whom were new hires in 2024—with setting Company-mandated goals and performing other tasks.

28.    On January 10, 2025, in accordance with the Company's complaint procedure and reporting policy, which are set forth in Vantage's Employee Handbook, York reported the

6

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

discriminatory work environment to Senior Vice-President Simon Casey, explaining that she needed his help. Casey did not provide a substantive response to York's report.

29. On Friday, January 11, 2025, which was the day after York reported the discrimination to Casey, he asked Wennstrom to create an executive presentation for one of York's projects. The presentation was for a Leadership Retreat the following week. When York learned of the presentation from Wennstrom on Tuesday, January 14, 2025, he explained that she was not included in development of the presentation because he assumed she would be with her kids on the weekend.

30. On January 21, 2025—only eleven days after York reported the discriminatory and biased work environment to Senior Vice-President Simon Casey—Greg Winn contacted York to schedule what he represented to be a routine "check-in" meeting. Instead of a "check in" regarding project status, however, the meeting was a coordinated ambush by Winn and HR to issue a written warning to York for purportedly "fail[ing] to meet the performance [Vantage] expect[ed] of [her], as outlined by the goals set for [her] at the outset of [her] employment on February 5, 2024 . . . ." Contrary to the written warning, York met the goals set for her at the beginning of her employment. Additionally, although the warning letter accused York of violating Company policy by not being physically present at the jobsite, previous communications demonstrate that Company representatives, including Winn, acknowledged that York would work three days onsite and two days offsite. Regarding this arrangement, Winn thanked York for navigating this issue with him.

31. The Company's creation of a post-hoc paper trail in an attempt to justify Vantage's later separation of York's employment was further debunked by the Company's internal investigation. HR's interviews of members of York's site-team demonstrated that the employees

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

who worked with York daily felt she was an exceptional leader, further evincing the pretextual nature of the allegations contained in the written warning.

32.     During the January 21, 2025 meeting when the Company issued the written warning to York, HR representative Kathleen Goodrich acknowledged that only days prior, York reported discrimination and bias to Senior Vice-President Simon Casey.  Nevertheless, Goodrich proceeded to issue the written warning, which she characterized as "more serious than a PIP."  By bypassing the Company's standard remedial performance processes, as set forth in the Employee Handbook, and concocting questions regarding York's fundamental ability to perform a role that she had successfully held for months, the Company made it clear that the objective was not improvement but rather a pretextual path to termination.

33.     During the meeting when Vantage issued the written warning to York, Winn accused York of relying on her status as a mother to avoid being at her jobsite five days a week.  York denied Winn's accusation and pointed out that his allegation shows improper bias.  Neither Winn nor the HR representative responded.  Also, during the meeting, York pointed out that, contrary to the written warning's assertion, she and Winn had not previously had any "coaching sessions" or any other discussions regarding York's performance.

34.     The clandestine and pretextual nature of the January 21, 2025 meeting carried over to the next day during Simon Casey's site visit.  Casey marginalized York's role as the Director over the jobsite by holding a meeting of only male executives and general contractor representatives and explicitly denied York from attending.  Further, York received no feedback afterward, effectively stripping her of her oversight responsibilities.

8

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

35. During the site visit, Casey targeted York's protected status as a postpartum mother and female when, in front of York's entire team, he questioned her use of a private office, which served as her legally-required lactation space.

36. During Casey's site visit on January 22, 2025, he and York met. When the issue of the January 21, 2025 written warning came up, York explained that she was consulting legal counsel. Casey immediately terminated the meeting. He began texting and dismissed York from the room, stating, "I guess we have nothing to talk about." Following York's mention of legal counsel, Casey refused to interact with her or her team for the remainder of the day.

37. On January 23, 2025, York met with Vantage HR Representative Kristie Fuentes regarding the written warning. York told Fuentes that the written warning was retaliation following York's previous report of discrimination to Casey. York expressed that the retaliation was compounded by Casey excluding York from leadership activities and disparaging her legally-protected lactation space. In response to York's concerns, Fuentes stated that she "understood the lack of inclusiveness" and acknowledged York feeling "overlooked for somebody else who's a male." Fuentes represented to York that she would advocate for her and that lactation space. Fuentes ended the conversation stating that HR would do the due diligence as HR professionals. Despite HR's verbal recognition that York was a high-level performer and the admission of a biased environment, York was never informed of any investigation into the written warning as retaliation.

38. On January 24, 2025, Plaintiff prepared a written response to HR explicitly invoking Vantage's Retaliation Policy. In this communication, she notified the Company that the written warning contained "false representations of her performance, actions, and intentions" and was being used as a bad-faith "paper trail" for adverse action. York pointed out that the timing

9

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

of this discipline, coming just eleven days after her protected report of bias, constituted unlawful retaliation. York received no response from the Company in reply to her January 24, 2025 formal grievance.

39. On January 31, 2025, Plaintiff met again with HR for what would be the final discussion before her termination. HR stated that the internal interviews with the site team were "great," confirming that the team viewed York as an exceptional leader and were highly satisfied with her leadership style. Despite this internal validation, no revisions were made to the written warning and no meetings were held with Winn, Casey, or any other executive. HR informed Plaintiff that the Company had "no appetite" to modify the letter for factual accuracy. HR stated that York would be held "accountable" to Winn's subjective interpretations regardless of factual errors. HR concluded the meeting by stating that the Company was "done talking about Greg [Winn]" and that York was the "only one who needs to make changes."

40. On February 6, 2025—less than four weeks after York reported discrimination to SVP Simon Casey and only six days after HR confirmed her team viewed her as an "exceptional" leader—the Company terminated her employment. The termination was executed by Vice President Gregory Winn, the very individual whose biased and retaliatory behavior York had formally reported in accordance with Company procedures. Despite York's request for a specific reason for the separation of employment, Winn and the attending Company representatives refused to provide a factual basis for the decision, stating only that the Company had "decided to part ways." This contradicted the Company's earlier representations that the January 21 Warning Letter was intended as a "starting point" for performance alignment. Furthermore, the termination occurred immediately after Ms. York had demonstrated full compliance with the tangible requests in the written warning, including daily onsite attendance and calendar transparency. By firing a

10

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

high-performing Director who had just flagged illegal retaliation and was meeting all newly stated expectations, the Company confirmed that the disciplinary process was a pretextual cover for a discriminatory and retaliatory discharge.

41.    The termination occurred just days before approximately $545,000 in stock was set to vest and York's 2025 bonus was to be paid—calculated at 30% of her salary and noted in the offer letter —projected to be $63,000.  Also, York was to receive an additional stock award—calculated at 20% of her current valuation totaling between $100,000 and $120,000, as had been customary in prior years and noted as an expectation in the interview process. Although the Company provided a stock valuation by email around December 2024, York inadvertently saved it only to her work hard drive, and it was not included in her personnel file.  She also suffered losses related to her 401(k) and other benefits.

42.    Vantage selected a male to fill the position that York had during her employment with the Company.

### FIRST CLAIM FOR RELIEF

*Pregnant Worker Fairness Act, 42 U.S.C. § 2000gg-1(1), Failure to Accommodate*

43.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

44.    Plaintiff was a qualified individual able to perform her job duties with or without a reasonable accommodation.

45.    Plaintiff was affected by a known pregnancy-related condition, including lactation.

46.    Defendant was aware of Plaintiff's pregnancy-related medical condition.

47.    As a result of her pregnancy-related condition, Plaintiff requested from Defendant a reasonable accommodation, including space for lactation while at work.

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

48.    Defendant failed to reasonably accommodate Plaintiff's pregnancy-related medical condition and failed to engage in the interactive process.

49.    Defendant failed to establish that Plaintiff's proposed accommodations would create an undue hardship on business operations.

50.    York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

51.    As a result of Defendant's violation of the PWFA, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

**SECOND CLAIM FOR RELIEF**

*Pregnant Worker Fairness Act, 42 U.S.C. § 2000gg-1(3), Denial of Employment Opportunity*

52.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

53.    During Plaintiff's employment with Defendant she took leave medically related to pregnancy and childbirth.

54.    Plaintiff's maternity leave began June 6, 2024 and ended August 29, 2024.

55.    In or about July 2024, while Plaintiff was on maternity leave, Simon Casey was promoted from Vice-President to Senior Vice-President leaving a vacancy to fill.

56.    Plaintiff was not allowed to even apply for the Vice-President position.

57.    Plaintiff was qualified for the Vice-President position, and the only possible reason that she was not even allowed to apply was because she was on leave medically related to pregnancy and childbirth.

12

58.     By not even allowing Plaintiff to apply, Defendant denied an employment opportunity to Plaintiff and such denial could only be associated with the need of the Defendant to provide leave to accommodate medical conditions related to pregnancy and childbirth.

59.     York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

60.     As a result of Defendant's violation of the PWFA, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

### THIRD CLAIM FOR RELIEF

*PUMP Act, 29 U.S.C. § 218d*

61.     Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

62.     Plaintiff was a covered employee with a nursing child under one year old.

63.     Plaintiff requested legally-compliant lactation space.

64.     Defendant failed to provide legally-compliant lactation space.

65.     Plaintiff suffered damages as a result, including discipline and retaliation.

66.     York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

67.     As a result of Defendant's violation of the PUMP Act, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

**FOURTH CLAIM FOR RELIEF**

*Sex Discrimination, 42 U.S.C. §§ 2000e – 2000e-17, Denial of Employment Opportunity*

68.     Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

69.     Plaintiff is female and belongs to a protected class.

70.     Plaintiff was qualified for the position of Vice-President.

71.     Plaintiff was subjected to an adverse employment action.  In particular, she was not allowed to apply for the Vice-President position.

72.     Plaintiff was treated less favorably than similarly-situated male employees who were allowed to apply for the Vice-President position.

73.     Defendant hired Greg Winn, a male, for the Vice-President position.

74.     There were no legitimate, nondiscriminatory reasons for Defendant's refusal to allow Plaintiff to apply for the VP position, and any reasons that Defendant proffers are merely pretext for discrimination.

75.     York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

76.     As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

. . .

. . .

. . .

14

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

## FIFTH CLAIM FOR RELIEF

*Sex Discrimination, 42 U.S.C. §§ 2000e – 2000e-17, Discipline & Termination*

77.     Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

78.     Plaintiff is female and belongs to a protected class.

79.     Plaintiff was qualified for her position as Director with Defendant, and she satisfactorily performed her job duties during her employment with Defendant.

80.     Plaintiff was subjected to an adverse employment action.  In particular, Defendant issued her a written warning and then terminated her employment.

81.     While employed with Defendant, Plaintiff was treated less favorably than similarly-situated male employees.

82.     After terminating York's employment, Defendant selected a male to fill the position that she held during her employment with the Company.

83.     There were no legitimate, nondiscriminatory reasons for Plaintiff's discharge, and any proffered reasons by Defendant are merely pretext for discrimination.

84.     York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

85.     As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

. . .

. . .

15

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

## SIXTH CLAIM FOR RELIEF

*Pregnancy Discrimination, 42 U.S.C. §§ 2000e – 2000e-17*

86.     Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

87.     Plaintiff was a member of a protected class, a female with a condition related to pregnancy.

88.     Plaintiff was qualified for the position of Vice-President.

89.     Plaintiff was subjected to an adverse employment action.  In particular, she was not allowed to apply for the Vice-President position.

90.     Plaintiff was treated less favorably than similarly-situated male employees who were allowed to apply for the Vice-President position.

91.     Defendant hired Greg Winn, a male, for the Vice-President position.

92.     There were no legitimate, nondiscriminatory reasons for Defendant's refusal to allow Plaintiff to apply for the VP position, and any reasons that Defendant proffers are merely pretext for discrimination.

93.     York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

94.     As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

. . .

. . .

16

## SEVENTH CLAIM FOR RELIEF

*Retaliation, 42 U.S.C. § 2000e-3(a)*

95.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

96.    By reporting discrimination and disparate treatment to Company representatives on January 10, 2025, York engaged in a protected activity under Title VII of the Civil Rights Act of 1964.

97.    On January 21, 2025—eleven days after York reported the discrimination and disparate treatment to Casey—Vantage subjected York to an adverse employment action by issuing her a written warning.

98.    On January 22, 2025, Senior Vice-President Simon Casey stopped speaking with York when she mentioned that she was seeking to consult with legal counsel regarding the January 21, 2025 written warning.

99.    On February 6, 2025—less than a month after York reported the discrimination and disparate treatment to Senior Vice President Simon Casey—Vantage terminated her employment and subjected her to an adverse employment action.

100.    A causal link exists due to the close temporal proximity between York's protected activity and the adverse employment actions by Vantage.  After York engaged in protected activity by reporting discrimination to Senior Vice President Simon Casey, Vantage took materially adverse employment actions, as described above, thereby demonstrating a plausible nexus between Plaintiff's protected activity and the Company's materially adverse employment actions based on temporal proximity.

17

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

101.    York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

102.    As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

**EIGHTH CLAIM FOR RELIEF**

*Nevada Pregnant Workers' Fairness Act, NRS 613.4353-.4383, Failure to Accommodate*

103.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

104.    The Nevada Pregnant Workers' Fairness Act ("NPWFA") mandates that "[i]f a female employee requests an accommodation for a condition of the employee relating to pregnancy, childbirth or a related medical condition, the employer and employee must engage in a timely, good faith and interactive process to determine an effective, reasonable accommodation for the employee. . . ." NRS 613.4371(1).

105.    Under the NPWFA, a related medication condition "includes, without limitation, lactation or the need to express breast milk for a nursing child." NRS 613.4359.

106.    An employer violates the NPWFA and commits an "unlawful employment practice" if it "[r]efuse[s] to provide a reasonable accommodation to a female employee . . . upon request of the employee . . . for a condition of the employee . . . relating to pregnancy, childbirth or a related medical condition, unless the accommodation would impose an undue hardship on the business of the employer as determined pursuant to NRS 613.4374." NRS 613.438(1)(a).

18

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

107. As alleged above and incorporated by reference herein, Defendant employ fifteen or more persons and are subject to the requirements of the NPWFA.

108. Plaintiff was a qualified employee who was affected by a known pregnancy-related medical condition, including lactation.

109. Defendant was aware of Plaintiff's pregnancy-related medical condition, including her "need to express breast milk for a nursing child," NRS 613.4359.

110. As a result of her pregnancy-related condition, Plaintiff requested from Defendant a reasonable accommodation, including in the form of time and dedicated private space for lactation.

111. Defendant failed to reasonably accommodate Plaintiff's pregnancy-related medical condition and failed to engage in the interactive process.

112. Defendant failed to establish that the accommodation would create an undue hardship on business operations as required by NRS 613.4374.

113. Furthermore, far from reasonably accommodating Plaintiff's pregnancy-related condition, Defendant terminated Plaintiff.

114. Defendant's refusal to comply with its accommodation obligations under the NPWFA, along with its failure to demonstrate (or even assert) undue hardship, constitutes an actionable unlawful employment practice.

115. York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

116. As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay,

19

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

## NINTH CLAIM FOR RELIEF

*Nevada Pregnant Workers' Act, NRS 613.4353-.4383, Retaliation*

117. Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

118. Plaintiff requested a reasonable accommodation from Defendant for her pregnancy-related condition, lactation.

119. Shortly after York's requested accommodation, Defendant took an adverse employment action against her by terminating her employment.

120. A causal nexus exists between Plaintiff's request for a reasonable accommodation and Defendant's adverse employment action against her. In particular, the temporal proximity between Plaintiff's accommodation request and the adverse employment actions by Defendant establishes a causal link. Consequently, Defendant violated NRS 613.438(1)(b) and committed an unlawful employment practice.

121. York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

122. As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

. . .

. . .

20

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

# TENTH CLAIM FOR RELIEF

*Sex Discrimination, Denial of Employment Opportunity, NRS 613.310-.345*

123.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

124.    Plaintiff is female and belongs to a protected class.

125.    Plaintiff was qualified for the position of Vice-President.

126.    Plaintiff was subjected to an adverse employment action.  In particular, she was not allowed to apply for the Vice-President position.

127.    Plaintiff was treated less favorably than similarly-situated male employees who were allowed to apply for the Vice-President position.

128.    Defendant hired Greg Winn, a male, for the Vice-President position.

129.    There were no legitimate, nondiscriminatory reasons for Defendant's refusal to allow Plaintiff to apply for the VP position, and any reasons that Defendant proffers are merely pretext for discrimination.

130.    York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

131.    As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

. . .

. . .

. . .

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

**ELEVENTH CLAIM FOR RELIEF**

*Sex Discrimination, Discipline & Termination, NRS 613.310-.345*

132.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

133.    Plaintiff is female and belongs to a protected class.

134.    Plaintiff was qualified for her position of Director with Defendant, and she satisfactorily performed her job duties during her employment with Defendant.

135.    Plaintiff was subjected to an adverse employment action.  In particular, Defendant issued her a written warning and later terminated her employment.

136.    While employed with Defendant, Plaintiff was treated less favorably than similarly-situated male employees.

137.    Defendant selected a male to fill the position that Plaintiff had during her employment with the Company.

138.    There were no legitimate, nondiscriminatory reasons for Plaintiff's discharge, and any proffered reasons by Defendant are merely pretext for discrimination.

139.    York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

140.    As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

. . .

. . .

22

## TWELFTH CLAIM FOR RELIEF

*Pregnancy Discrimination, NRS 613.310-.345*

141.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

142.    Plaintiff was a member of a protected class, a female with a condition related to pregnancy.

143.    Plaintiff was qualified for the position of Vice-President.

144.    Plaintiff was subjected to an adverse employment action.  In particular, she was not allowed to apply for the Vice-President position.

145.    Plaintiff was treated less favorably than similarly-situated male employees who were allowed to apply for the Vice-President position.

146.    Defendant hired Greg Winn, a male, for the Vice-President position.

147.    There were no legitimate, nondiscriminatory reasons for Defendant's refusal to allow Plaintiff to apply for the VP position, and any reasons that Defendant proffers are merely pretext for discrimination.

148.    York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law.

149.    As a result of Defendant's violation of the law, Plaintiff has sustained damages, and she seeks all remedies available to her under the law including lost compensation, back pay, lost benefits, equitable relief, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, and interest.

. . .

. . .

23

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

## THIRTEENTH CLAIM FOR RELIEF

*Retaliation, NRS 613.310-.345*

150.    Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

151.    By reporting discrimination and disparate treatment to Company representatives on January 10, 2025, York engaged in a protected activity under NRS Chapter 613.

152.    On January 21, 2025—eleven days after York reported the discrimination and disparate treatment to Casey—Vantage subjected York to an adverse employment action by issuing her a written warning.

153.    On January 22, 2025, Senior Vice-President Simon Casey stopped speaking with York when she mentioned that she was seeking to consult with legal counsel regarding the January 21, 2025 written warning.

154.    On February 6, 2025—less than a month after York reported the discrimination and disparate treatment to Senior Vice President Simon Casey—Vantage terminated her employment and subjected her to an adverse employment action.

155.    A causal link exists between York's protected activity and the adverse employment actions by Vantage.  After York engaged in protected activity by reporting discrimination to Senior Vice President Simon Casey and Company HR, Vantage took materially adverse employment actions thereby demonstrating a plausible nexus between Plaintiff's protected activity and the Company's materially adverse employment actions.

156.    Because Defendant unlawfully retaliated against York in violation of NRS Chapter 613, Defendant are liable to York for damages in an amount to be determined at trial for back pay, front pay, lost benefits, compensatory damages for emotional pain, suffering, inconvenience,

24

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070

mental anguish, and loss of enjoyment of life, punitive damages, NRS 613.432, and Plaintiff demands a trial by jury.

157. York has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of Defendant's violations of the law; therefore, she is entitled to recover reasonable attorneys' fees pursuant to Nevada law. NRS 613.432.

**FOURTEENTH CLAIM FOR RELIEF**

*Negligent Hiring, Supervision, and Retention*

158. Plaintiff repeats and realleges the averments of the foregoing paragraphs as though fully set forth herein.

159. Defendant was under a duty to exercise reasonable control of their employees so that they would not harm Plaintiff.

160. Defendant knew or reasonably should have known of the acts of Defendant's employees that harmed Plaintiff.

161. By failing to properly supervise, train, and control its employees, Defendant breached their duty to exercise reasonable care owed to Plaintiff.

162. Defendant's breach of their duties harmed Plaintiff, and Defendant must pay Plaintiff damages in an amount to be determined at trial.

163. Because Defendant are guilty of oppression and malice, express or implied, they must pay Plaintiff an additional amount for the sake of example and by way of punishment.

164. Because Plaintiff has been obligated to procure the services of an attorney to protect her rights as a result of Defendant's acts, Plaintiff is entitled to an award of reasonable attorneys' fees as part of her damages.

25

165.    Plaintiff demands a trial by jury of all issues that may be tried to a jury.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant, jointly and severally, as follows:

A.    Plaintiff be awarded damages, including, but not limited to, lost compensation, back pay, and front pay, all in amounts to be determined at trial;

B.    Plaintiff be awarded employment benefits denied or lost by Plaintiff as a result of Defendant's unlawful conduct;

C.    Plaintiff be awarded compensatory damages as allowed by law;

D.    Plaintiff be awarded pre- and post-judgment interest to the maximum extent allowed by law;

E.    Plaintiff be awarded punitive damages as allowed by law;

F.    Plaintiff be awarded liquidated damages as allowed by law;

G.    Plaintiff be awarded her reasonable attorneys' fees and costs incurred in prosecution of this action; and

H.    For such other and further relief as the Court deems just and proper.

DATED: March 15, 2026.           /s/ *Dustin L. Clark*
                                 *Attorney for Plaintiff Lindsey York*

26

Dustin L. Clark
Attorney at Law
1127 E 230 N
Lindon, UT 84042
702.540.9070